BESSIE B. BLACKWELL, APPELLEE, V. OMAHA ATHLETIC CLUB, APPELLANT.

FILED MAY 26, 1932.   No. 28054.

*Kennedy, Holland & DeLacy,* for appellant.

*Daniel J. Gross, contra.*

Heard before GOSS, C. J., EBERLY and PAINE, JJ., and BEGLEY and ELDRED, District Judges.

ELDRED, District Judge.

This is a personal injury action brought by Bessie B. Blackwell, plaintiff and appellee, against the Omaha Athletic Club, defendant and appellant, to recover damages for injuries claimed to have been sustained on account of negligence of the life guard of the defendant.

The petition alleges that on June 25, 1929, the plaintiff was swimming in the club pool with a Mrs. Kopperud. That Mrs. Kopperud went beyond her depth and called for help; that plaintiff went to her assistance; and while attempting to aid her, an attendant at the pool, believing plaintiff to be in difficulty, jerked her and pulled her out over the bank of the pool, injuring her left arm, side and back. From judgment in favor of plaintiff, the defendant appeals.

The first assignment of error raises the question of the sufficiency of the evidence to sustain the verdict; the point being that there can be no action against the proprietor of a swimming pool based on rough handling by a life guard while making a rescue; and, even if there could be, there was not, in this case, evidence of negligent rough handling.

Proprietors of bathing resorts or pools in discharging their duty toward their patrons and guests are not only under obligation to keep an attendant or life guard on hand to supervise and protect bathers in case of accident, but are liable for ordinary negligence of the attendant in the performance of his duties. A life guard who goes to the rescue of a patron or guest owes the duty of exercising ordinary care; that is, such care as would be used by an ordinarily cautious life guard under like circumstances; and for a failure in this respect, with resulting injury, an action for damages will lie. In this case there

is a direct conflict in the evidence offered on behalf of the plaintiff and that offered on behalf of the defendant as to the manner in which the plaintiff was removed from the pool by the attendant, and as to resulting injury.

On the part of the plaintiff there is evidence that, when Mrs. Kopperud called for help, the life guard being temporarily absent and not responding, plaintiff went to her assistance; that about that time the attendant returned, and considering that plaintiff was in need of assistance, undertook to get her out of the pool; that having pulled her to the brink of the pool he jumped up on the side thereof and attempted to pull her up, having hold of plaintiff's arm; he had difficulty on account of her weight, and to secure the aid of the buoyancy of the water, let her slide down in the water three or four times with her side scraping the edge of the pool before he finally got her out; and that the injuries complained of were due to the treatment so received. Testimony on the part of the defendant refutes that of the plaintiff; the life guard testifying he used what is referred to as the crossed hands method; that is, "You cross your hands. She was facing the wall of the pool. I crossed my hands, stooped, and let her body settle down in the water so as to take all of the slack in my arms and give me a good start to pull, then when I lowered her body in the water, I just straightened up and turned the hands and brought her into a sitting position on the bank." There is evidence that this was a proper method to have used.

If the jury found the facts to be as indicated by the testimony offered on behalf of the plaintiff, there was evidence from which a jury might find the defendant liable. It thus became a question for the jury. *Stohlman v. Davis,* 117 Neb. 178.

By requested instruction No. 10 the court was asked to advise the jury as to the extent of defendant's liability in a case of this kind; the instruction advising the jury that defendant was only liable for failing to use that degree of care and caution which an ordinarily careful and prudent

man would use under like circumstances. The gist of the entire instruction, while of considerable length, is that the defendant was only liable for the failure of its attendant to use ordinary care. While the instruction was more specific, and stated the issues more in detail, the jury were advised by instruction No. 1, given by the court on its own motion, upon what negligence the plaintiff was relying; and in instruction No. 2, that plaintiff must prove negligence before she could recover; and in instruction No. 3, negligence, ordinary care, and proximate cause were defined. We think the issues as stated to the jury by the instructions given were sufficiently definite and certain.

Assignments 10 and 11 are requests for instructions embodying parts of the requested instruction No. 10, and what has been said with reference to the refusal to give instruction No. 10 is applicable to these assignments.

The petition charges that the defendant was negligent in a number of particulars; and appellant urges that by the instructions of the court the jury were given a free hand; it being contended that the jury were not confined to any particular charge of negligence, upon which to base a verdict. The court, in stating plaintiff's claim, in the first instruction, omitted all reference to any act of claimed negligence other than negligence due to rough, careless and severe handling by the attendant; and by instruction No. 2, in stating what plaintiff must prove before she could recover, advised the jury: "She must further prove that her injuries were caused by negligence of the defendant." There is nothing in the record to indicate that the jury were ever advised that the plaintiff was making a claim that the defendant was negligent in any particular, other than as advised in instruction No. 1. The jury being advised of only one element of claimed negligence, and further informed that to recover plaintiff must prove negligence, we conclude the criticism made cannot be sustained.

Complaint is made of the failure of the court to give instructions Nos. 2, 3, 5, and 6, requested by defendant. These tendered instructions requested the court to advise the jury that the evidence was insufficient to warrant the finding of negligence in the particulars charged in the petition, but which were omitted by the trial court in the statement of the issues to the jury. There was nothing to withdraw with reference to them.

The court was requested to advise the jury that the mere fact that plaintiff sustained some injury in being lifted from the pool was not evidence that there was negligence on the part of the attendant, Greenlee, on the theory that the mere fact that an accident happened is not of itself evidence of negligence. While the proposition contended for, as a general statement, may be sound, it would seem that, if the plaintiff was injured in being lifted from the pool, then the nature, character and extent of her injuries would be evidence which might properly be considered by the jury in a case of this character, in determining the issue of negligence. The refusal to give the instruction was not error.

The court refused to give requested instruction No. 8, which admonished the jury that they should not be influenced or actuated by any degree of sympathy, or by the fact that the plaintiff was an individual and the defendant a corporation. While such an instruction is sometimes given upon request, and may have been appropriate in this action, yet the giving of such a cautionary instruction is discretionary with the trial court, and the failure to give the same cannot be successfully assigned as error.

Complaint is made of the refusal to charge the jury on contributory negligence. From the record it appears that the plaintiff, an experienced swimmer, during the temporary absence of the life guard, went to the assistance of Mrs. Kopperud, who was in trouble in deep water and calling for help. There was nothing shown indicating that her actions in attempting to render assistance were

negligent. The fact that her actions may have been attended by some hazard would not, of itself, make them negligent. From an examination of the evidence we conclude that there was no question of contributory negligence which should have been submitted to the jury in this case.

Misconduct is charged on the part of two jurors. It developed on the trial of the case that the defendant carried liability insurance, and that the Harry A. Koch Company was agent for the insurance company involved. From the evidence offered by affidavits in support of the motion for a new trial, it appears that on the *voir dire* examination inquiry was made by the attorney for the plaintiff, apparently of the jurors collectively, if any one of the jurors was acquainted with Harry A. Koch, or the Harry A. Koch Company; that one venireman, who was later accepted as a juror, remained silent and failed to disclose that he was acquainted with Harry A. Koch, and had been employed by the American Paving Corporation, of which Koch was one of the principal stockholders; that he was discharged by that corporation, and had endeavored to get Koch to secure his reinstatement, but that Koch did nothing to that end; and Koch alleges in his affidavit that he understands that such juror has borne a grudge against such affiant. Just how the veniremen were requested to express themselves, whether they were asked to rise, or to hold up their hands, or to speak out, if they had such acquaintance with Koch, does not appear; and it does not appear that any inquiry was made as to any connection or association with the American Paving Corporation, the alleged former employer of the juror. It is further set forth in the affidavit that the attorneys for the defendant on the *voir dire* examination specifically inquired of all jurors whether or not any of them had ever brought suit on account of a personal injury, or made claim based upon personal injury, and that another venireman remained silent and failed to disclose that he had been

injured in the employ of Armour & Company, and that proceedings were had under the workmen's compensation law, before the compensation commissioner, and subsequently on appeal to the district court. It may be that the venireman did not view the proceedings instituted before the compensation commissioner as a suit. But, however that may be, so far as the record shows, both of these veniremen were on the regular panel of jurors. The parties to the suit knew there was a possibility of their being called in this case. All of the facts referred to in the affidavits were either known by the parties interested, or could have been ascertained, before the trial began. Another affidavit filed by a party not directly connected with the case indicates that after the trial was over one of the jurors referred to made comments about the case and the verdict returned, indicating hostility or ill feeling toward the defendant and Koch. There is nothing, however, to indicate when the hostility developed, or its source. The affidavits further disclose that when the jurors were asked by the court and the counsel for both parties whether there was anything outside of the evidence that would influence any of the jurors in their verdict, the venireman referred to remained silent and failed to disclose his feeling toward Koch. No further showing is made as to the disqualification of these jurors, nor as to the manner or extent of their examination prior to being accepted as such. The *voir dire* examination was evidently not reported. The trial court necessarily heard the examination, and with the advantage of such knowledge overruled the motion for a new trial.

"Where a new trial is asked for on the ground of misconduct of a juror or of the prevailing party, the finding of the trial court in support of the verdict will not be set aside unless the evidence of misconduct is of a clear and convincing character." *Omaha Fair & Exposition Ass'n v. Missouri P. R. Co.*, 42 Neb. 105; *Wessel v. Bishop*, 76 Neb. 74.

Finally, the defendant urges that the verdict is so excessive as to indicate bias and prejudice on the part of the jury. There seems to be some merit in the contention that the verdict is excessive. With reference to the injuries sustained, the plaintiff testified that she talked with Dr. Isacson, a friend of the family, but not a practicing physician, who suggested that she be strapped. Plaintiff did not like to be strapped with adhesive tape. She just got an old fashioned corset and wore it, and was in bed about two weeks, and gradually got over the trouble in her side. Her arm was stiff; could not get that back to her head. She got over that trouble and the trouble settled in her back and has been there ever since. On the morning following the night she was pulled out of the pool, she testified that her side was black and blue; arm looked as if the blood vessels had broken; black streaks all up her arm and prints of his fingers on her wrists, black prints. Black and blue spots stayed a week or so and finally disappeared. There was a sharp shooting pain in her side so that she could not turn over. Had not been able to do her housework since. Bothers her quite a lot in resting and sleeping. There is a throbbing shooting pain when she gets tired, and she goes to bed very tired, with sharp shooting pains. She consulted with three doctors at different times, one of whom was Dr. Schwertley. She first consulted him February 2, 1930; the injuries occurred June 25, 1929. The evidence does not disclose when she consulted other physicians, and they were not called as witnesses. According to Dr. Schwertley there were no broken bones. Plaintiff was a portly woman, about 60 years of age; the eyes, tonsils, neck, chest, lungs and heart normal. Blood pressure was within the normal limits for a woman of her age. Bony system was normal. She was considerably overweight for her height and age. Made a diagnosis of a traumatic condition of sprain of soft tissues, including the muscles and ligaments of that region in the back, also a sprain, traumatic in character, of the muscles and ligaments of

the right shoulder. Gave her infra red ray treatment. Her arm cleared a little under a massage treatment, but could notice no improvement in the back. Was of the opinion, from the history given him and the examination made, that pain found was due to laceration of the muscles and tender tissues, and that the condition will become chronic. In the summer of 1930, she made a trip by automobile to Madison, Wisconsin, and return, about 800 miles. As to the effect of that trip upon plaintiff her husband testified: "Well, Mrs. Blackwell, as I say, didn't suffer very much unless she was on her feet or working around. If she was sitting down or lying down comfortably, she was able to get along."

The verdict and judgment thereon were for the sum of $7,500. We believe that the damages awarded are excessive, and that the facts would not justify a verdict in excess of $4,500. If the plaintiff will file a remittitur in this court within twenty days for the sum of $3,000, as of the date of the judgment appealed from, the judgment will be affirmed for $4,500, with interest from date of judgment in district court; otherwise, it will be reversed and cause remanded for a new trial.

AFFIRMED ON CONDITION.