VIDA v. MILLER ALLIED INDUSTRIES, INC.

1. CONSPIRACY—PLEADING.
   The mere characterization of an action as one for conspiracy is insufficient in a declaration, where supporting facts are not alleged therein.

2. CONTRACTS—EXISTENCE—PLEADING—OPENING STATEMENT.
   Cause of action was properly dismissed as to defendant which moved to dismiss for lack of contractual relation between plaintiffs and it, where second amended declaration and plaintiffs' opening statement disclosed that alleged contract, upon which action was based, had never existed.

3. TRIAL—ACTION—OPENING STATEMENT.
   A motion for judgment of no cause for action may be granted at the close of plaintiffs' opening statement, where statement shows that plaintiffs have no cause of action or right to recover, since it would then be an idle waste of the court's time to hear evidence which could not benefit the party offering it.

REFERENCES FOR POINTS IN HEADNOTES
[1] 11 Am Jur, Conspiracy § 29 *et seq.*
[2, 3] 53 Am Jur, Trial §§ 373–375.

Appeal from Wayne; Murphy (George B.), J. Submitted October 11, 1956. (Docket No. 25, Calendar No. 46,920.) Decided December 6, 1956. Rehearing denied June 10, 1957.

Action, originally in assumpsit, by Stanley Vida and Thomas Wade, copartners doing business as Cadillac Industries, against Miller Allied Industries, Inc., a Michigan corporation, and Curtis Metal Products Company, variously designated as a Michigan corporation and as a copartnership, for sums due on subcontract, with proceedings in case against defendant Curtis on theory of its alleged illegal subletting to defendant Miller. Judgment for defendant Curtis on pleadings and opening statement. Plaintiffs appeal. Affirmed.

*Fixel & Fixel,* for plaintiffs.

*Leib & Leib,* for defendant Curtis Metal Products Company.

KELLY, J. Plaintiffs appeal from a judgment of no cause of action granted at the conclusion of plaintiffs' opening statement.

Plaintiffs entered into an agreement with Miller Allied Industries, Inc. (hereinafter referred to as Miller), to fabricate bearing housings (except chroming), to be used in the construction of bomber planes. Plaintiffs proceeded to secure the material necessary and, also, did some inspection work, but contracted with others to do the actual fabrication of said housings. After plaintiffs' subcontractors had completed their work on the construction of the bearing housings, they were forwarded to plaintiffs who, in turn, forwarded same to Miller.

In analyzing plaintiffs' claim that they only received $2,245.50 under an agreed contract price

whereby they were to receive $14,404.72 from Miller, it is advisable to examine plaintiffs' position as set forth in the original declaration filed April 30, 1953, and, also, the first amended declaration (May 7, 1953) and the second amended declaration (August 3, 1955).

In the original declaration plaintiffs alleged that defendant Miller, acting as agent for Curtis Metal Products Company, placed orders for bearing assemblies with plaintiffs; that plaintiffs completed all necessary work and delivered said bearing assemblies to defendant Miller for Curtis Metal Products Company.

In the first amended declaration plaintiffs did not materially add to the statement set forth in their original declaration. Answering plaintiffs' first amended declaration, defendant Curtis Metal Products Company stated:

"Answering paragraph 6 of plaintiffs' declaration, defendant Curtis Metal Products Co., denies same and shows that there is no privity of contract between the plaintiff and this defendant. And for further answer to said declaration, defendant Curtis Metal Products Co., shows that on June 24, 1952, they placed their purchase order with Miller Allied Industries, Inc., for the doing of certain assembly work on a contract that they had received from North American Aviation, Inc.; that Miller Allied Industries, Inc., undertook to perform said work and agreed to make delivery in accordance with its agreement with Curtis Metal Products Co., that this defendant did not authorize the performance of said work by any other person, firm or corporation; that Miller Allied Industries, Inc., made delivery of said items to Curtis Metal Products Co., which then shipped same to North American Aviation, Inc.; that North American Aviation, Inc., rejected the parts as being defective; and Curtis Metal Products Co., so informed Miller Allied Industries, Inc.; that

if Miller Allied Industries, Inc., subcontracted said work to plaintiff, it was done without the knowledge or consent of this defendant."

In the second amended declaration, plaintiffs, for the first time, stated that the action was based upon the fact that Curtis entered into a contract with Miller who did not have the plant, nor the technical knowledge or know-how necessary to carry forward the contract and that after plaintiffs forwarded the fabricated parts to Miller, Miller contracted with various chroming plants and that the work done by these chroming plants was so defective as to make the parts unusable and not acceptable to the United States government. Plaintiffs in their brief state:

"The illegal subcontract entered into by defendants Miller and Curtis, was not disclosed until a pretrial examination was had. This examination disclosed that Federal statutes and rules of public policy were violated by the defendants in this transaction. After such disclosure, plaintiffs' pleadings were amended in order to set forth the illegal transaction entered into by Curtis and Miller which brought about plaintiffs' damage."

In their opening statement to the court, plaintiffs admitted, under questioning, that there had been no meeting between plaintiffs and Curtis and that no contractual relationship existed between plaintiffs and Curtis, but they contended that when Curtis entered into its contract with Miller it impliedly held out Miller as a qualified person or substitute manufacturer to manufacture said bearing assemblies.

The court in discussing this question with plaintiffs' attorney summed up plaintiffs' position, without objection from plaintiffs' attorney, as follows:

"*The Court:* If the plaintiffs did certain work under the Miller contract, and did it in a workmanlike manner, the plaintiffs should be paid by Miller. Cur-

tis had nothing to do with that contract as such, but the plaintiffs were never paid by Miller because Miller had no money to pay them, or he did not pay them, regardless of what was the cause of it, Miller never paid the plaintiffs.

"*Mr. Fixel:* We expect to show he was out of business and defunct and hard to find and could not be served with a witness subpoena. He is gone.

"*The Court:* The plaintiffs want to get paid for their work which was legitimately done, and instead of getting their money direct from the contracting party, they are now adding Curtis in there, and accomplishing what they should get from Miller by bringing Curtis in and saying, in effect:

" 'Curtis, you had no right to give this contract to Miller and it is illegal because of the rules and regulations of the government and we want to get from you the money that Miller owes us, because, in the last analysis, he was no good.'

"*Mr. Fixel:* It was the damage they sustained.

"*The Court:* 'He was no good, and the damage that we sustained by virtue of Miller, you pay us.' That is it, is it not?

"*Mr. Fixel:* The damage that flows from an illegal combination of that kind is recoverable.

"*The Court:* The plaintiffs are trying to recover from Curtis the money that Miller owes them, and they are arriving at that because of an illegal combination.

"*Mr. Fixel:* What they want to recover is the damage that flowed from its illegal arrangement. * * *

"*The Court:* In other words, the plaintiffs are in court—stripping the case of all these immaterial things—the plaintiffs are in court on the law side with an action on the case?

"*Mr. Fixel:* That is correct.

"*The Court:* For damages suffered by them as the result of a contract between Curtis and Miller, basically an illegal contract?

"*Mr. Fixel:* Yes.

· *"The Court:* And because of this illegality and the lack of workmanship of Miller the bomber parts were rejected?

· *"Mr. Fixel:* That is right."

Plaintiffs' position is that they proceeded to deal with Miller without ascertaining whether Miller was financially responsible or qualified to carry on the processing after plaintiffs delivered the fabricated parts to Miller, and that any failure on plaintiffs' part should be charged to Curtis and not to plaintiffs, as is evidenced by the court's summation, during hearing on the motion to dismiss, as follows:

"They, in turn, sublet the contract to the plaintiffs in this action, and the position of the plaintiffs is, it was the duty of the Curtis Company to know that Miller was a 5 percenter, or a so-called 'middleman', and the duty did not fall upon the plaintiffs to find that out.

"Curtis becomes responsible financially for the losses here because they sublet to the Miller Company. The plaintiffs never had a contract with Curtis."

Plaintiffs' action is predicated entirely upon the theory that the contract entered into between Curtis and Miller did not meet the requirements of Federal rules, regulations and statutes. Defendant Curtis in its answer denies that the contract between Curtis and Miller was illegal. There is no allegation in the declaration that Curtis knowingly entered into an illegal contract with Miller.

The declaration and the amended declarations do not even mention the word "conspiracy" and the first time the word was used was in the argument made by plaintiffs' counsel during the opening statement resisting defendant Curtis' motion to dismiss. The facts set forth in the declaration do not disclose that any conspiracy was entered into between Curtis and Miller.

In *Greer* v. *Parks,* 300 Mich 492, 497, this Court said:

"It was difficult to pin Greer down as to just what the conspiracy consisted of as the declaration is very indefinite. Characterizing an action as one for conspiracy without giving supporting facts in a declaration is insufficient, but even should the allegations be deemed barely sufficient, judgments must be based upon the testimony, not on general words in a declaration."

The court in granting defendant Curtis' motion to dismiss, stated:

"The second amended declaration has been brought to my attention as being the declaration at this trial. The second amended declaration consists of 2 counts, a special count and the common counts. The cause of action here is based on *ex contractu,* not *ex delicto.* The pleadings and statements made by counsel for plaintiffs, and the opening statement, show that there was never a contract between Curtis Metal Products Company and the plaintiffs.

"On the pleadings, the opening statement, on behalf of the plaintiffs, and the motion to dismiss for a judgment on the pleadings against the defendants, this court is constrained to grant the motion, and there will be an order entered here on the pleadings and the opening statement of counsel for plaintiffs of no cause for action in favor of defendant Curtis Metal Products Company, costs to be taxed."

Miller Allied Industries, Inc., did not appear at the proceedings and was not represented by counsel, and the court subsequently dismissed the case against Miller, without objection from plaintiffs.

This Court in *Bean* v. *State Land Office Board,* 335 Mich 165, 176, in discussing the general rule followed in directing a verdict upon the opening statement of plaintiffs' counsel, quoted with approval from 53 Am Jur, Trial, § 373, pp 303, 304, as follows:

" 'It is a well-established general rule, followed by the majority of the courts of this country, including the courts of the United States, that the trial court may usually direct a verdict for the defendant upon the opening statement of the plaintiffs' counsel, where that statement shows that the plaintiff has no cause of action or right to recover. The rule is founded on the theory that the time of the court and the jury would be wasted, since the result, if the evidence were introduced, would necessarily be the same; that it would be an idle waste of time to hear evidence which could not benefit the party offering it.  *  *  *  And a trial court has the right to act upon the facts deliberately conceded by counsel in his opening statement to the jury, and direct a verdict against the plaintiff, if such conceded facts would not entitle him to a verdict; but such power must be exercised sparingly, and never without full consideration and opportunity for counsel to qualify his statement, so far as the truth will permit.' "

Affirmed, costs to appellee.

Dethmers, C. J., and Sharpe, Smith, Edwards, Carr, and Black, JJ., concurred.

Boyles, J., did not sit.