ROMINE v CLEVELAND

1. AUTOMOBILES—GUEST PASSENGERS—WILLFUL OR WANTON MISCON-
   DUCT—GROSS NEGLIGENCE—EVIDENCE.

   Proof that a driver of a motor vehicle attempted to overtake and
   pass another vehicle moving at 45 to 50 miles per hour at night
   with visibility cut by fog to no less than 150 feet is not in itself
   sufficient to sustain a finding of willful and wanton misconduct
   or gross negligence required by statute for liability of a host to
   a guest passenger (MCLA 257.401).

2. AUTOMOBILES—GUEST PASSENGERS—WILLFUL OR WANTON MISCON-
   DUCT—GROSS NEGLIGENCE.

   The test of liability in guest-passenger cases requires, beyond
   ordinary negligence, either a course of conduct involving a high
   degree of danger, a manifest probability that harm will result
   therefrom, and an utter disregard of the probable conse-
   quences, or an affirmatively reckless state of mind with intent
   to depart from careful driving (MCLA 257.401).

Appeal from Gratiot, Leo W. Corkin, J. Submit-
ted Division 3 March 7, 1973, at Grand Rapids.
(Docket No. 13763.) Decided March 28, 1973. Leave
to appeal denied, 390 Mich 770.

Complaint by Robbyn Romine by Charles F.
Romine, her next friend, against Lorraine K.
Cleveland and John Cleveland for damages for
injuries sustained in an automobile accident. Di-
rected verdict for defendants. Plaintiff appeals.
Affirmed.

*Sinas, Dramis, Brake & Turner, P. C.* (by *Ken-
neth G. McIntyre),* for plaintiff.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 8 Am Jur 2d, Automobiles and Highway Traffic § 469.

*Hillman, Baxter & Hammond* (by *Joel M. Boyden* and *Joel E. Krissoff*), for defendants.

Before: R. B. BURNS, P. J., and T. M. BURNS and PETERSON,* JJ.

PETERSON, J. Plaintiff sued for injuries incurred while riding as a passenger in an automobile operated by defendant, Lorraine Cleveland.[1] Seeking to avoid the statutory bar[2] to negligence actions by guest passengers, plaintiff charged willful and wanton misconduct on the part of her driver. At the close of plaintiff's proofs, verdict was directed for defendant on the ground that plaintiff's proofs at most established simple negligence on the part of defendant and failed to present a jury question of willful and wanton misconduct or gross negligence. Plaintiff appeals.

There is no dispute but that on June 1, 1968, plaintiff, defendant, and two girlfriends went to the Bass Lake Dance Pavilion, located on highway M-46, 16 miles west of Alma. Between 8 and 9 p.m., before arriving at the pavilion, they consumed varying amounts of alcoholic beverages. After their arrival, one of the party, Vicky Ramsey, became ill and then unconscious. Accompanied by the pavilion operator, Carl Rohwetter, defendant took Miss Ramsey to the hospital at Alma. It was then not yet dark. Leaving the unconscious Miss Ramsey at the hospital, defendant took Rohwetter back to the pavilion, picked up plaintiff, and headed back for the hospital. En route, while attempting to pass another vehicle,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Hereinafter referred to as *the* defendant for simplicity. Lorraine was operating the automobile with the consent of its owner, co-defendant John Cleveland.

[2] MCLA 257.401; MSA 9.2101.

they were involved in a collision with an oncoming car. It was then about 11 p.m. Plaintiff testified that she had no memory of the trip.

Plaintiff contends that defendant drove in a willful and wanton, or grossly negligent manner, in that while influenced by alcohol, and in a state of emotional upset over the condition of her friend, she drove at an excessive rate of speed and attempted to overtake and pass another car while in a dense fog. An examination of the record discloses no basis for an inference that defendant was under the influence of intoxicants, that her driving prior to the attempt to pass was at any time or in any way erratic or reckless, or that she was driving at an excessive rate of speed. The sole testimony bearing on speed was that of defendant, called for cross-examination, that she had followed the overtaken car a distance of perhaps 2 miles at a speed of 45 to 50 miles per hour and that in the course of attempting to pass that car she had accelerated but that she did not know what speed she attained, that it could have been 65 miles an hour, or more, or less. Whatever that speed, the record shows it to be significant only as a part of the attempted overtaking and passing and not independently demonstrative of a reckless course of conduct.

The accident happened near the intersection of Bliss Road and M-46, a two-lane blacktop highway. At this point, M-46 proceeds easterly down a half-mile-long hill to Bliss Road and then across a low area called the Elwell Flats. Plaintiff's proofs tended to establish that fog is common on the flats, that defendant was familiar with the area living less than a half mile north of the M-46–Bliss Road intersection, that during the trip back to the pavilion from Alma, Carl Rohwetter had commented to

defendant on some patches of fog gathering, and that by the time of the accident the fog east of Bliss Road was heavy. On the other hand, there appears to have been no fog to the west of the crest of the hill. Whether there was fog between the crest and the foot of the hill is disputed.

Defendant contends, and so testified, that she cleared the crest of the hill, and at a point about halfway down pulled out, saw no lights oncoming and so started her attempt to overtake and pass the lead car. To this point she claimed to have seen no fog. Before she could complete the passing maneuver, she said, she suddenly saw oncoming lights in fog ahead. Both vehicles attempted to avoid collision, unfortunately by the same impulse to head off the road, and they collided with the resultant injuries to plaintiff. The point of impact was 361 feet east of Bliss Road. Three witnesses viewing the hill shortly after the collision testified that the fog then reached the crest of the hill, and they described it variously as "bad", "very foggy", "fairly foggy", and "enough to have trouble seeing".

We think the view of the evidence most favorable to plaintiff would allow the jury to believe that defendant started her passing maneuver in fog which became progressively worse as she descended the hill; that the fog was not such as to totally obscure visibility, and that, based on the testimony of the other driver and the combined skid marks of the two approaching cars after they saw each other, visibility at the area where the impact occurred was at least 150 feet. Notwithstanding the conflicting factual claims of the parties, this presents but one issue: is the attempt to overtake and pass another vehicle moving at 45 to 50 miles per hour with night visibility so reduced

in itself willful and wanton misconduct or grossly negligent? The trial judge so defined the issue, answered "no", and directed a verdict. We agree.

The test of liability in guest-passenger cases requires, beyond ordinary negligence, a course of conduct involving "a high degree of danger, a manifest probability that harm will result therefrom, and an utter disregard of the probable consequences", or "an affirmatively reckless state of mind with intent to depart from careful driving". See *Stevens v Stevens,* 355 Mich 363, 371 (1959); *Brooks v Haack,* 374 Mich 261, 265 (1965), and cases cited therein.

*Tuinstra v Lynema,* 340 Mich 534 (1954), relied upon by plaintiff, involved a visibility problem in a sense in that the defendant driver attempted to pass while approaching a curve beyond which foliage cut off visibility of oncoming traffic. In that case, however, the defendant entered the passing lane a mile from the curve on a clear day, ran alongside the overtaken car over half a mile as it sped up, and continued to do so when he could have returned to the right-hand lane even after he saw the oncoming car 1,000 feet from the point of collision. The case is thus both factually different and illustrative of an affirmative reckless state of mind on the part of the driver which is not present in this case. The passing-visibility cases cited by plaintiff from other jurisdictions fall into three categories: (1) those in which, with perfect atmospheric visibility, the driver undertook to overtake and pass at a blind curve or intersection; (2) those in which other acts evidencing recklessness were present; or (3) those in which the driver attempted to overtake and pass with atmospheric visibility that was not merely reduced but totally eliminated —the pea-soup fog, completely opaque cloud of

dust, or blinding snow storm. See 6 ALR3d 832, *et seq.* Needless to say, such cases illustrate driving conduct deliberately challenging known perilous probabilities or recklessly indifferent thereto, which would be properly submissible to a jury in Michigan as presenting a question of gross negligence or willful and wanton misconduct. We agree with the trial judge that this is not such a case.

Affirmed, with costs to defendant.

All concurred.