MANISTEE BANK & TRUST COMPANY v McGOWAN

Docket No. 54961. Argued May 8, 1974 (Calendar No. 8).—Decided
September 8, 1975.

The Manistee Bank & Trust Company, administrator of the
estate of Mardelle H. Williams, brought an action against
William G. McGowan and Walter L. Pamame for wrongful
death in an automobile accident. Before trial, plaintiff chal-
lenged the constitutionality of the guest passenger statute,
MCLA 257.401; MSA 9.2101, insofar as it requires a guest
passenger to demonstrate that any injury, death or loss was
caused by the gross negligence or willful and wanton miscon-
duct of the owner or operator of the motor vehicle, on the
ground that the statute denies equal protection of the laws. The
Manistee Circuit Court, Charles A. Wickens, J., rejected the
constitutional challenge and a verdict of no cause of action was
returned against plaintiff. Leave to appeal prior to decision of
the Court of Appeals was granted. In an opinion by Levin, J., in
which T. G. Kavanagh, C. J., and Williams, J., concurred, it was
*held* that the statute is unconstitutional as violative of the
Equal Protection Clause of the Michigan Constitution of 1963:

1. The Equal Protection Clause, like the Due Process Clause,
is a guaranty that controls the reasonableness of governmental
action. What is reasonable is in each instance a matter of
judgment, in the final analysis, a value judgment, and should
be recognized as such. Whether the court upholds or invalidates
a statute, it is making value judgments.

2. There are two versions of the traditional equal protection
test applied to classifications where a "fundamental interest" is

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 12] 8 Am Jur 2d, Automobiles and Highway Traffic § 472.
Constitutionality of automobile guest statutes. 111 ALR 1011.
[2, 3, 21] 16 Am Jur 2d, Constitutional Law §§ 101 *et seq.,* 168, 169,
210 *et seq.*
[3, 4, 6–10, 13, 15, 17–20, 22] 16 Am Jur 2d, Constitutional Law §§ 419
*et seq.,* 506 *et seq.,* 550.
[4] 16 Am Jur 2d, Constitutional Law §§ 161, 282, 283.
[5–11, 15–18, 20, 22] 16 Am Jur 2d, Constitutional Law §§ 550–553.
[14, 16] 16 Am Jur 2d, Constitutional Law §§ 259 *et seq.,* 297.

not involved. One of these is the "any conceivable state of facts" standard which will not support a finding of unconstitutionality; the other is the "fair and substantial relation to the object of the legislation" standard, which invites the court to examine and determine whether the classification bears a real relation to the perceived purposes. The choice of test is a matter of judgment, and at least where the challenged statute carves out a discrete exception to a general rule and the statutory exception is no longer experimental, the substantial-relation-to-the-object test should be applied. Where all possible rationales have been developed and it can no longer be claimed that the legislation is experimental and as such entitled to deference to the legislative judgment, a court should not dismiss a constitutional challenge on the hypothesis that perhaps the Legislature also had other reasons for the law.

3. To deny guests recompense for negligently inflicted injury, death or loss cannot be justified as a reasonable means to promote hospitality, foster gratitude, prevent collusion, perjury or fraud, reduce insurance premiums, or protect generous drivers from vexatious litigation by ungrateful guests or conniving hitchhikers.

4. The guest passenger exception to the owners' liability statute is unconstitutional.

M. S. Coleman, J., in a dissent in which J. W. Fitzgerald, J., joined, would affirm because the plaintiff has failed to demonstrate that the Legislature acted arbitrarily or that the guest passenger act bears no rational relationship to permissible statutory objectives, and the act does not come within the purview of the "strict scrutiny" test. The generally accepted standard of review in the analysis of legislative classifications not involving fundamental interests or suspect criteria is whether the classification rationally furthers a legitimate state purpose or interest. The Court should proceed with restraint and deference when asked to nullify statutes. The most obvious reasons for a guest passenger act, to minimize collusion and fraud and to promote "hospitality" by a driver, and out of these to keep insurance premiums within reasonable limits, are still reasons the validity of which is for legislative determination; the Legislature has the means for gathering the data and background material upon which to base public policy and subsequent modification, repeal, or ratification of the act, and the Court should defer to the Legislature. This case sets the pattern for future scrutiny of legislation: with no substitution of standards for those abolished, it will be too easy to override the Legislature. The prevailing opinion does violence to the

doctrine of separation of powers and places too much power in the judiciary.

OPINION OF THE COURT

1. AUTOMOBILES—GUEST PASSENGER ACT—CONSTITUTIONAL LAW—
   EQUAL PROTECTION.

   The guest passenger act, a statutory exception to the general rule of common law and statutory liability for negligent driving, is unconstitutional because it deprives a guest passenger of equal protection of the laws under the Michigan Constitution (Const 1963, art 1, § 2; MCLA 257.401).

2. CONSTITUTIONAL LAW—STATUTES—JUDICIAL RESTRAINT.

   One can accept the philosophy of judicial restraint which lies behind rules explicating the heavy burden that must be borne by one who assails the constitutionality of a presumptively valid and incontestably wise statute, and still recognize the responsibility of the courts to strike the statute where the Legislature's judgment of the wisdom of a statute is shown to conflict with a constitutional limitation on legislative power.

3. CONSTITUTIONAL LAW—STATUTES—CLASSIFICATION—EQUAL PROTEC-
   TION—DUE PROCESS.

   The Equal Protection Clause, like the Due Process Clause, is a guaranty that controls the reasonableness of governmental action; a statutory classification must be a reasonable one, and it must bear a reasonable relation to the object of the legislation.

4. CONSTITUTIONAL LAW—STATUTES—CLASSIFICATION—EQUAL PROTEC-
   TION.

   What is a reasonable statutory classification is in each instance a value judgment, whether the court upholds or invalidates the statute.

5. CONSTITUTIONAL LAW—STATUTES—CLASSIFICATION—SUBSTANTIAL-
   RELATION-TO-THE-OBJECT TEST.

   Where a challenged statute carves out a discrete exception to a general rule and the statutory exception is no longer experimental, the substantial-relation-to-the-object test should be applied to determine whether the statutory classification is unconstitutional.

6. CONSTITUTIONAL LAW—STATUTES—CLASSIFICATION.

   Where a challenged statutory classification scheme creates a discrete exception to a general rule and has been enforced for a

sufficiently long period of time so that all the rationales likely to be advanced in its support have been developed, the court should fully examine those rationales and determine whether they are sound, and should not dismiss a constitutional challenge on the hypothesis that perhaps the Legislature also had other reasons for the law.

7. AUTOMOBILES—GUEST PASSENGERS—STATUTES—CLASSIFICATION.

Accepting *arguendo* that the two principal justifications offered to support guest passenger statutes, the protection of hospitality and the elimination of collusive lawsuits, are valid purposes, it remains necessary even under the traditional rational basis test to determine whether the classification scheme worked by the guest statute is reasonable; it is not enough merely to suggest possible legislative purposes, but a court must examine whether there is some relation between the classification and those purposes and whether it is reasonable.

8. AUTOMOBILES—GUEST PASSENGERS—CLASSIFICATION—REASONABLE-NESS—COLLUSION.

To deprive the entire class of guest passengers of protection against negligently inflicted injury or death because some members of the class may be friends and relatives and a collusive lawsuit may be brought presents a classic case of an impermissibly overinclusive classification scheme, that is, a scheme in which a statute's classification imposes a burden upon a wider range of individuals than are included in the class of those tainted with the mischief at which the law aims; conceding, *arguendo,* that there is a higher risk of collusion in guest passenger cases, it is disproportionate, and therefore unreasonable, to bar recovery in the large generality of cases to forestall a few successful frauds.

9. AUTOMOBILES—GUEST PASSENGERS—HITCHHIKERS—MANUFACTURED CLAIMS.

There is no evidence today of any danger to motorists of manufactured claims by hitchhikers as justification for the protection of generous motorists by a guest passenger statute.

10. AUTOMOBILES—GUEST PASSENGERS—HOSPITALITY—GROUP TRANS-PORTATION.

The presence or absence of a guest passenger statute does not affect the decision of friends and relatives to ride together in an automobile or the decision of a driver to pick up a hitchhiker; the absence of a guest passenger statute would not chill hospi-

tality or group transportation any more or less than its existence promotes such activity.

11. AUTOMOBILES—GUEST PASSENGERS—STATUTES—CLASSIFICATION—
    INSURANCE.

    Lower insurance premiums do not, without more, justify an essentially arbitrary statutory classification; denying guest passengers recovery for ordinary negligence is not reasonably related to the objective of lower insurance rates.

12. AUTOMOBILES—GUEST PASSENGERS.

    To deny automobile guest passengers recompense for negligently inflicted injury, death or loss cannot be justified as a reasonable means to promote hospitality, foster gratitude, prevent collusion, perjury or fraud, reduce insurance premiums, or protect generous drivers from vexatious litigation by ungrateful guests or conniving hitchhikers.

DISSENTING OPINION

M. S. COLEMAN and J. W. FITZGERALD, JJ.

13. CONSTITUTIONAL LAW—AUTOMOBILES—GUEST PASSENGER ACT—
    STATUTES.

    *The abrogation of the guest passenger act is a matter for legislative determination; to hold the act unconstitutional as a denial of equal protection places too much power in the judiciary and is contrary to the doctrine of separation of powers.*

14. CONSTITUTIONAL LAW—POLICE LAWS—CLASSIFICATION—EQUAL
    PROTECTION.

    *The equal protection clause of the Fourteenth Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary (US Const, Am XIV).*

15. CONSTITUTIONAL LAW—POLICE LAWS—CLASSIFICATION—EQUAL
    PROTECTION.

    *A classification having some reasonable basis does not offend against the equal protection clause of the Fourteenth Amendment merely because it is not made with mathematical nicety or because in practice it results in some inequality; when the classification in a police law is called in question, if any state of facts reasonably can be conceived that would sustain it, the*

*existence of that state of facts at the time the law was enacted must be assumed (US Const, Am XIV).*

16. CONSTITUTIONAL LAW—POLICE LAWS—CLASSIFICATION—BURDEN OF PROOF.

*One who assails the classification in a police law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.*

17. CONSTITUTIONAL LAW—EQUAL PROTECTION—STATE ACTION.

*The constitutional standard under the equal protection clause is whether the challenged state action rationally furthers a legitimate state purpose or interest.*

18. CONSTITUTIONAL LAW—EQUAL PROTECTION—STANDARD OF REVIEW.

*Under the equal protection clause, the application of the traditional standard of review requires only that a state's system be shown to bear some rational relationship to legitimate state purposes.*

19. CONSTITUTIONAL LAW—STATUTES—CLASSIFICATION—STRICT SCRUTINY.

*Legislation is subject to "strict scrutiny" when classifications concern a fundamental interest or are based on a certain criteria such as race, but the automobile guest passenger proviso is not such legislation.*

20. CONSTITUTIONAL LAW—STATUTES—CLASSIFICATION.

*Courts do not inquire whether a statute is wise or desirable; misguided laws may nonetheless be constitutional; the courts' task is merely to determine whether there is some rationality in the nature of the class singled out.*

21. CONSTITUTIONAL LAW—STATUTES—PRESUMPTIONS.

*Legislation is entitled to a presumption of constitutional validity and although not every legislative enactment is immune to judicial abrogation, the Supreme Court should proceed with restraint and deference when asked to nullify legislation; the Court is not the forum for debate concerning the desirability of legislation.*

22. AUTOMOBILES—GUEST PASSENGER ACT—CONSTITUTIONAL LAW—EQUAL PROTECTION—CLASSIFICATION.

*The automobile guest passenger statute has not been shown to violate the guarantees of equal protection of the laws because the classification is rational on its face and the plaintiff has failed to demonstrate that the statute fails to bear some ra-*

*tional relationship to a permissible statutory objective (MCLA
257.401).*

*Jennings, DeVries & Gockerman,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Joseph B. Bil-
itzke* and *Carl K. Carlsen,* Assistants Attorney
General, for defendants.

Amicus Curiae:

*McCroskey, Libner, VanLeuven, Kortering, Co-
chrane & Brock.*

*Leitson, Dean, Dean, Segar & Hart, P. C.,* and
*Lopatin, Miller, Bindes & Freedman,* for Michigan
Trial Lawyers Association.

LEVIN, J. An act of the Legislature provides that
the owner of an automobile driven with permis-
sion is subject to liability if it is negligently driven
and causes damage to property or injury or death
to a person. The act further provides that neither
the owner nor a driver is liable for injury or death
caused a guest passenger by negligent driving.[1]

The act expressly permits a guest passenger,
along with everyone else, to recover for grossly
negligent driving. But this does not save the classi-
fication if it is otherwise unreasonable. To tell a
person who cannot prove gross negligence, but can
prove ordinary negligence, that he could have

---

[1] "Provided, however, That no person, transported by the owner or
operator of a motor vehicle as his guest without payment for such
transportation shall have a cause of action for damages against such
owner or operator for injury, death or loss, in case of accident, unless
such accident shall have been caused by the gross negligence or wilful
and wanton misconduct of the owner or operator of such motor
vehicle and unless such gross negligence or wilful and wanton miscon-
duct contributed to the injury, death or loss for which the action is
brought." MCLA 257.401; MSA 9.2101.

recovered if he had been able to prove gross negligence is not much different than consoling a marooned person with the thought that if he had wings he could fly.

The question before us is whether this statutory exception to the general rule of common law and statutory liability for negligent driving deprives a guest passenger of due process and equal protection of the laws under the state or Federal Constitutions.

Mardelle Williams was killed as a result of an accident which occurred while she was a guest passenger in an automobile owned by defendant Pamame and driven by defendant McGowan.

Before trial, the plaintiff, administrator of the estate of Mardelle Williams, moved to strike that portion of the answer relying on the guest passenger exception claiming that it violates the due process and equal protection clauses.[2] The trial court denied the motion because it felt "bound by the doctrine of stare decisis and the guest passenger act has heretofore been held to be constitutional in the State of Michigan."

In his opening statement, the lawyer for Pamame and McGowan admitted that McGowan was guilty of ordinary negligence. The jury returned a verdict of no cause of action.

This Court granted leave to appeal prior to decision by the Court of Appeals.

---

[2] Plaintiff alleged that the guest passenger statute is "in violation of the due process clause and equal protection clause of the Fourteenth Amendment of the Constitution of the United States and Article I, Section 2 and Article I, Section 17 of the Constitution of the State of Michigan of 1963, in that the Guest Act makes an unreasonable and arbitrary distinction, without any reasonable basis in fact or in law, as to the liability of an owner and driver for injuries and damages sustained by a 'guest passenger' in the owner's or driver's motor vehicle and all other persons injured by the negligence of the owner or driver".

We hold the guest passenger exception unconstitutional as violative of the Equal Protection Clause of the Michigan Constitution (Const 1963, art 1, § 2) and reverse and remand for trial on the question of damages.

I

Guest passenger statutes were enacted in about half the states during the 1920's and 1930's.[3]

Connecticut, in 1927,[4] was the first state to enact a guest statute[5] and, in 1937, the first state to repeal its guest statute.[6]

In 1929 Michigan enacted a guest statute[7] which this Court held constitutional in 1931. *Naudzius v Lahr,* 253 Mich 216; 234 NW 581; 74 ALR 1189 (1931).

---

[3] 2 Harper & James, Torts, § 16.15, p 950 *et seq.;* Prosser, Torts (4th ed), § 34, p 186.

[4] Iowa also enacted a guest statute in 1927. In *Keasling v Thompson,* 217 NW2d 687 (Iowa, 1974), the Iowa Supreme Court upheld the constitutionality of the statute in a 5-4 decision.

[5] In *Silver v Silver,* 280 US 117, 122, 123; 50 S Ct 57; 74 L Ed 221; 65 ALR 939 (1929), the United States Supreme Court held that Connecticut's guest statute did not violate the equal protection clause of the Fourteenth Amendment.

The classification examined in *Silver* was not the distinction between those passengers who pay and those who do not, but rather "between gratuitous passengers in automobiles and those in other classes of vehicles".

The Court held that the classification was a reasonable one because "[t]he use of the automobile as an instrument of transportation is peculiarly the subject of [state] regulation".

The question whether the distinction between guests and paying passengers is a reasonable one was not decided by the Court in *Silver* and *Silver* was distinguished on that ground in *Brown v Merlo,* 8 Cal 3d 855, 863-864, n 4; 106 Cal Rptr 388, 393-394, n 4; 506 P2d 212, 217-218, n 4 (1973), and *Thompson v Hagan,* 96 Idaho 19, 23-24; 523 P2d 1365, 1369-1370 (1974).

[6] Conn Gen Stat § 540E (Supp, 1939).

[7] 1929 PA 19.

No state has enacted a guest statute since 1939.[8] Despite substantial criticism in the courts as well as academia,[9] these statutes withstood constitutional attack until the California Supreme Court, in *Brown v Merlo,* 8 Cal 3d 855, 882; 106 Cal Rptr 388, 407; 506 P2d 212, 231 (1973), held that the California guest statute violates the equal

---

[8] Florida repealed its guest statute in 1972. Law of Feb 14, 1972, ch 72-1, § 1, [1974] Fla Laws, repealing Fla Stat Ann § 320.59 (1968).

Illinois amended its guest statute to apply only to hitchhikers. Ill Ann Stat, Ch 95 1/2, § 10-201 (Smith-Hurd Cum Supp, 1975).

Texas amended its statute to limit "guests" to relatives in the second degree of consanguinity or affinity. Law effective Sept 1, 1973, ch 28, § 3 Tex Gen Laws, 63d Legislature, amending Tex Rev Civ Stat, Art 6701b (1969).

In 1965, ten states unsuccessfully attempted to repeal their guest statutes. In 1967, seven others also failed to garner the necessary support.

23 Drake L Rev 216, 218, fn 16 citing ABA Special Comm on Automobile Reparations, Report 86 (1969).

[9] "See e.g., Prosser, Law of Torts (4th ed. 1971) section 34, pages 186–187; Lascher, *Hard Laws Make Bad Cases—Lots of Them (The California Guest Statute)* (1968) 9 Santa Clara Law. 1; Gibson, *Guest Passenger Discrimination* (1968) 6 Alberta L. Rev. 211; Note, *The Case Against the Guest Statute* (1966) 7 Wm. & Mary L. Rev. 321; Note, *Problems of Recovery under the Iowa Guest Statute* (1962) 47 Iowa L. Rev. 1049; Pedrick, *Taken for a Ride: The Automobile Guest and Assumption of Risk* (1961) 22 La. L. Rev. 90; Comment, *The Illinois Guest Statute: An Analysis & Reappraisal* (1959) 54 Nw. U. L. Rev. 263; Tipton, *Florida's Automobile Guest Statute* (1958) 11 U. Fla. L Rev. 287; Mundt, *The South Dakota Guest Statute* (1957) 2 So. Dakota L. Rev. 70; White, *The Liability of an Automobile Driver to a Non-Paying Passenger* (1934) 20 Va. L. Rev. 326; *Clark v Clark* (1966) 107 N.H. 351, 356–357 [222 A.2d 205, 210]; *Cohen v Kaminetsky* (1961) 36 N.J. 276, 283 [176 A.2d 483, 487]; *Stevens v Stevens* (1959) 355 Mich. 363 [94 N.W. 2d 858]; *Hewlett v Schadel* (4th Cir. 1934) 68 F.2d 502." *Brown v Merlo,* fn 5 *supra,* fn 22.

*See, additionally,* Note, *The Present Status of Automobile Guest Statutes,* 59 Cornell L Rev 659 (1974); Note, *Guest Statutes: Have Recent Cases Brought Them to the End of the Road?,* 49 Notre Dame Lawyer 446 (1973); Comment, *Equal Protection Challenges to Automobile Guest Statutes,* 8 Creighton L Rev 432 (1974); Comment, *Judicial Activism in Tort Reform: The Guest Statute Exemplar and a Proposal for Comparative Negligence,* 21 UCLA L Rev 1566 (1974); Recent Cases, *Constitutional Law—Guest Statute Violates Equal Protection of the Law,* 50 ND L Rev 139 (1973); Note, *Torts—California Guest Statute Unconstitutional Denial of Equal Protection,* 23 Drake L Rev 216 (1973).

protection guarantees of the state and Federal Constitutions for the reason that "the classifications which the guest statute creates between those denied and those permitted recovery for negligently inflicted injuries do not bear a substantial and rational relation to the statute's purposes of protecting the hospitality of the host-driver and of preventing collusive lawsuits".

Since the *Brown* decision, a number of states have considered the constitutionality of their guest statutes. Kansas,[10] North Dakota[11] and Idaho[12] have held their guest statutes unconstitutional. Texas,[13] Iowa,[14] Utah,[15] Delaware,[16] Oregon,[17] Colorado,[18] and South Dakota[19] declined to follow the California lead; the Delaware Court said that elimination of a guest statute is more properly within the realm of legislative action.[20]

## II

There are two principal problems in judicial review under the Equal Protection Clause: The

---

[10] *Henry v Bauder,* 213 Kan 751, 756; 518 P2d 362, 367 (1974).

The Kansas Supreme Court reviewed decisions interpreting the guest statute and found "a crazy-quilt pattern of application of the guest act which permits recovery in many factual situations and denies recovery in others. Some of these decisions clearly show the inequities of the statute and the resulting denial of equal justice to persons similarly situated".

We agree that "unequal treatment" arising from inconsistent judicial interpretations of the statute is not a ground for voiding the statute. Such analysis is judicial bootstrapping.

[11] *Johnson v Hassett,* 217 NW2d 771 (ND, 1974).

[12] *Thompson v Hagan,* fn 5 *supra.*

[13] *Tisko v Harrison,* 500 SW2d 565 (Tex Civ App, 1973). Texas has since the *Tisko* decision amended its guest statute. *See* fn 8.

[14] *See* fn 4.

[15] *Cannon v Oviatt,* — Utah 2d —; 520 P2d 883, 886 (1974).

[16] *Justice v Gatchell,* 325 A2d 97 (Del, 1974).

[17] *Duerst v Limbocker,* — Or —; 525 P2d 99 (1974).

[18] *Richardson v Hansen,* — Colo —; 527 P2d 536 (1974).

[19] *Behrns v Burke,* — SD —; 229 NW2d 86 (1975).

[20] *Justice v Gatchell,* fn 16 *supra.*

role of the courts in constitutional adjudication and the test to be applied. The questions of what role and which test are interrelated. The choice of test is frequently determinative of the judicial role.

It has been argued that judicial amendment or abrogation of the guest passenger exception is inappropriate and that the Legislature is the proper forum for the necessary inquiries and deliberations.

All agree that the power of the Legislature is not without limits. "[T]hat those limits may not be mistaken, or forgotten, the Constitution is written." *Marbury v Madison,* 5 US (1 Cranch) 137; 2 L Ed 60 (1803). And that those limits not be exceeded, the courts are entrusted with the responsibility to review and the power to nullify legislative acts which are repugnant to the constitution.[21]

The question when and how actively a court should exercise its power of constitutional review has engendered vigorous debate.[22]

It has been said that "legislatures exist to decide the wisdom of statutes, courts exist to decide their constitutionality."[23] That the legislative solution appears undesirable, unfair, unjust or inhumane does not of itself empower a court to override the

---

[21] Whether or not compelled by the logic of *Marbury,* the conclusion that the courts do have a role to play in constitutional review of legislative acts is by now well-supported by experience and universally accepted.

[22] Bickel, *The Least Dangerous Branch* (Bobbs-Merrill Co, Inc, 1962); Wright, *Professor Bickel, The Scholarly Tradition and The Supreme Court,* 84 Harv L Rev 769 (1971); Linde, *Judges, Critics and the Realist Tradition,* 82 Yale L J 227 (1972); Shaman, *The Rule of Reasonableness in Constitutional Adjudication: Toward the End of Irresponsible Judicial Review and the Establishment of a Viable Theory of the Equal Protection Clause,* 2 Hastings Const LQ 153, 174 (1975).

[23] *Keasling v Thompson,* fn 4 *supra,* 700 (dissent).

legislature and substitute its own solution.[24] A legislative classification need not be drawn with "mathematical nicety";[25] "rough accommodations —illogical, it may be, and unscientific" will do.[26] Statutes are cloaked with a presumption of constitutional validity. The burden of rebutting that presumption is on the person challenging the statute.

One can accept the philosophy of judicial restraint which lies behind "rules" explicating the heavy burden that must be borne by one who assails the constitutionality of a presumptively valid and incontestably wise statute, and still recognize "the responsibility of the courts to strike the statute" where "the legislature's judgment of the wisdom of a statute is shown to conflict with a constitutional limitation on legislative power".[27]

Justice Harlan was of the opinion that all equal protection questions[28] should be resolved applying the standard of rationality. He found "nothing which entitles this court to pick out particular human activities, characterize them as 'fundamental,' and give them added protection under an unusually stringent equal protection test". His rejection of the fundamental interest characterization reflected his insistence on judicial restraint lest the Court become a "super-legislature".[29]

[24] *Dandridge v Williams,* 397 US 471; 90 S Ct 1153; 25 L Ed 2d 491 (1970).

[25] *Lindsley v Natural Carbonic Gas Co,* 220 US 61, 78; 31 S Ct 337, 340; 55 L Ed 369, 377 (1911).

[26] *Metropolis Theatre Co v Chicago,* 228 US 61, 69–70; 33 S Ct 441, 443; 57 L Ed 730, 734 (1913).

[27] *Keasling v Thompson,* fn 4 *supra,* 700.

[28] "Except with respect to racial classifications, to which unique historical considerations apply * * * ." *Dandridge v Williams,* fn 24 *supra,* 489.

[29] *Shapiro v Thompson,* 394 US 618, 661–662; 89 S Ct 1322, 1346; 22 L Ed 2d 600, 631 (1969).

Notwithstanding Justice Harlan's views, the United States Supreme Court developed a two-tiered[30] approach to equal protection cases.

If the interest is "fundamental" or the classification "suspect", the court applies a "strict scrutiny" test requiring the state to show a "compelling" interest which justifies the classification. Rarely have courts sustained legislation subjected to this standard of review.[31]

Other legislation, principally social and economic, is subjected to review under the traditional equal protection test. The burden is on the person challenging the classification to show that it is without reasonable justification. It has been said that "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it".[32] A classification will stand unless it is shown to be "essentially arbitrary".[33] Few statutes have been found so wanting in "rationality" as to fail to satisfy the "essentially arbitrary" test.[34]

It has been noted recently that the United States Supreme Court, under a "revitalized" traditional equal protection test, has found a number of social and economic statutes unconstitutional.[35]

Professor Gunther sees in a group of cases de-

---

[30] See Note, *Developments in the Law: Equal Protection*, 82 Harv L Rev 1065 (1969), for a comprehensive discussion of the two-tiered approach.

[31] See fn 30 and Gunther, *Foreward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection*, 86 Harv L Rev 1 (1972).

[32] *Dandridge v Williams*, fn 24 *supra*, 485.

[33] *Lindsley v Natural Carbonic Gas Co*, fn 25 *supra*.

[34] From 1941 to 1970, the United States Supreme Court found economic legislation to violate the equal protection clause in only one case, *Morey v Doud*, 354 US 457; 77 S Ct 1344; 1 L Ed 2d 1485 (1957). Note, *Developments*, fn 30 *supra*, 1087.

[35] Gunther, fn 31 *supra*.

cided during and preceding the 1971 term of Court an emerging new standard of equal protection which he calls "means scrutiny". He suggests that the Court, expanding on the "rational basis/compelling state interest" dichotomy, appears to be willing to take a moderately activist position without invoking the "strict scrutiny" formula.

Relying on the traditional equal protection test, the California, Idaho, Kansas, and North Dakota[36] Supreme Courts held their guest passenger statutes unconstitutional; the Supreme Courts of Texas, Iowa, Utah, Delaware, Oregon, Colorado, and South Dakota, relying on the same standard, reach the opposite result.

One commentator explains the apparent inconsistency by suggesting that there are really two traditional equal protection standards— *Dandridge*[37] and *Reed*[38]—and "the test selected will predetermine the result the court will reach".[39] The *Dandridge* "any conceivable state of facts" standard[40] literally precludes analysis of the classification and will not support a finding of unconstitutionality, while the *Reed* "fair and sub-

[36] The North Dakota Supreme Court struck down its guest statute as violative of the state constitutional guarantee of equal protection of the laws. The analysis was similar to traditional equal protection.

[37] "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' * * * 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' " *Dandridge v Williams,* fn 24 *supra,* 485.

[38] "A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation * * * .' " *Reed v Reed,* 404 US 71; 92 S Ct 251; 30 L Ed 2d 225 (1971).

[39] Comment, *Equal Protection Challenges to Automobile Guest Statutes,* 8 Creighton L Rev 432, 447 (1974).

[40] Based on *Lindsley v Natural Carbonic Gas Co,* fn 25 *supra,* and used in *Naudzius v Lahr,* 253 Mich 216, 223; 234 NW 581; 74 ALR 1189 (1931): "Can a state of facts be conceived which would form a reasonable basis for the classification at bar?"

stantial relation to the object of the legislation"
standard invites the court to examine and deter-
mine whether the classification bears a real rela-
tion to the perceived purposes.

This Court has employed the fair-and-substan-
tial-relation-to-the-object-of-the-legislation      test,
dubbed "means scrutiny" by Gunther, in some
recent cases where acts of the Legislature have
been found unconstitutional:

"Are the enactment's classifications based on natural
distinguishing characteristics and do they bear a *rea-
sonable relationship to the object* of the legislation?"
*Alexander v Detroit,* 392 Mich 30, 35; 219 NW2d 41
(1974). (Emphasis supplied.)

"In determining what is within legislative discretion
and what is arbitrary, regard must be had for the
particular subject of the State legislation. There must
be *a relation between the classification and the pur-
poses of the act* in which it is found." *Fox v Employ-
ment Security Commission,* 379 Mich 579, 588; 153
NW2d 644 (1967). (T. M. KAVANAGH, J., Justices BLACK,
SOURIS and BRENNAN concurring.) (Emphasis supplied.)

"This diverse treatment of members of a class along
the lines of governmental or private tortfeasors bears
no *reasonable relationship* under today's circumstances
*to the recognized purpose of the act." Reich v State
Highway Department,* 386 Mich 617, 623; 194 NW2d
700 (1972). (Emphasis supplied.)

A commentator writes that the California Su-
preme Court "applied a somewhat redefined stan-
dard of equal protection—a standard requiring a
'realistic', rather than merely a 'legitimate', state
purpose which is *substantially,* rather than merely
rationally, supported by the classification system
set up by the legislature. * * * The Court in
*Brown* refused to attribute to the legislature a
'theoretically "conceivable", but totally unrealistic,
state purpose that might support this classification

scheme' * * * ". (Emphasis in original.)[41] In short, the California Supreme Court approached its reviewing function in the manner Professor Gunther identifies as "means scrutiny" or "equal protection bite without 'strict scrutiny' ".[42]

Whatever label[43] is attached to the analysis— whether traditional equal protection, *Dandridge* test, *Reed* test, means scrutiny, or "a complete and realistic balancing of interests"[44]—"the governing rule is one of reason: The Equal Protection Clause, like the Due Process Clause, is a guaranty that controls the reasonableness of governmental action".[45] The classification must be a reasonable one, and it must bear a reasonable relation to the object of the legislation.

What is reasonable is in each instance a matter of judgment. In the final analysis, it is a value judgment and should be recognized as such. "Whether the court *upholds or invalidates* a statute, the court is making policy, making value judgments." (Emphasis supplied.)[46]

So, too, is the choice of test a matter of judgment. In my judgment, at least where the challenged statute carves out a discrete exception to a general rule and the statutory exception is no longer experimental, the substantial-relation-to-the-object test should be applied.

Judicial deference to the Legislature is premised

---

[41] Comment, *Judicial Activism in Tort Reform: The Guest Statute Exemplar and a Proposal for Comparative Negligence,* 21 UCLA L Rev 1566, 1567–1568 (1974).

[42] Gunther, fn 31 *supra,* 12.

[43] Polonius: "What do you read, my lord?"

Hamlet: "Words, words, words."

Hamlet, Act II, Scene 2, thanks to Comment, *The Ohio Guest Statute,* 22 Ohio St LJ 629, 637 (1961).

[44] Shaman, fn 22 *supra.*

[45] Schwartz, *Constitutional Law* (MacMillan Co, NY, 1972) p 288.

[46] Shaman, fn 22 *supra.*

in part upon the perceived need for experimentation, especially in social and economic matters.

"[T]he Equal Protection Clause does not require that a state must choose between attacking every aspect of a problem or not attacking the problem at all."[47]

The guest passenger statutes have operated for 45 years to deny a discrete group—guest passengers—recovery for death, injury or loss caused by ordinary negligence. They have been criticized, amended, repealed, whittled away and struck down.

A court can no longer properly view the guest statutes as but the first experimental step in a legislative scheme designed eventually to require, for example, that gross negligence be shown before any person can recover for injuries suffered in an automobile accident.

Where a classification scheme creates a discrete exception to a general rule and has been enforced for a sufficiently long period of time that all the rationales likely to be advanced in its support have been developed, a court should fully examine those rationales and determine whether they are sound.

It is understandable that a court reviewing what may be "experimental" legislation would say, as did this Court in *Naudzius,* "[p]erhaps the legislature also had other reasons for the law". Where, however, it can no longer be claimed that the legislation is experimental, where all possible rationales have been developed, a court should not dismiss a constitutional challenge on that hypothesis.

---

[47] *Dandridge v Williams,* fn 24 *supra,* 486–487.

### III

Two principal justifications have been offered to support guest statutes: The protection of hospitality and the elimination of collusive lawsuits.

Accepting, *arguendo,* that these are valid purposes, it remains necessary even under the traditional rational basis test to determine whether the classification scheme worked by the guest statute is reasonable. It is not enough merely to suggest possible legislative purposes. A court must examine whether there is some relation between the classification and those purposes and—assuming there is some relation—whether it is reasonable.

### IV

This Court in *Naudzius* said that "collusion, perjury and consequent fraud" is one of the principal evils against which this legislation is directed. Guest passengers are often friends or relatives of the driver. Since the real defendant in an action by an injured guest is generally not the driver, but his insurance company, it is assumed that the driver might "cooperate" with his injured guest to prove negligence.

There may indeed be incentive for collusion where the injured person is a friend or relative. However, to deprive the entire class of guest passengers of protection against negligently inflicted injury or death because some members of the class may be friends and relatives and a collusive lawsuit may be brought "presents a classic case of an impermissibly overinclusive classification scheme, that is, a scheme in which a statute's classification 'imposes a burden upon a wider range of individu-

als than are included in the class of those tainted with the mischief at which the law aims' ".[48]

In this case it is conceded that McGowan was guilty of ordinary negligence. This plaintiff is denied recovery solely because of a statute which is defended as necessary to prevent collusion to establish that which is here conceded.

Not infrequently the defendant driver is hostile to the plaintiff guest passenger and offers evidence in opposition to recovery. In other cases, he has no evidence to offer—he may be dead. In any such case, collusion is but a remote possibility.

Assuming that some drivers are willing falsely to admit negligence to enable some of their guests to recover against their insurance companies, they might be as willing falsely to admit gross negligence.

That there are other protections against the perceived evil of collusion between friendly litigants has been recognized by a number of states, including Michigan, which have abolished interspousal and intra-family immunity.[49]

Friends and acquaintances of the litigants are the most frequent witnesses in almost every case. We depend upon the judicial process to ferret out non-meritorious claims.

Witnesses are subject to rigorous examination before the trier of fact. Those who testify falsely run the risk of penalties for perjury. In most personal injury cases, the insurance company represents the insured and will vigorously defend against liability. Insurance policies usually require the insured to cooperate with his insurer.

---

[48] *Brown v Merlo,* fn 5 *supra,* 876, quoting Tussman & tenBroek, *The Equal Protection of the Laws,* 37 Cal L Rev 341, 351 (1949).

[49] *See Hosko v Hosko,* 385 Mich 39; 187 NW2d 236 (1971), and MCLA 600.2001; MSA 27A.2001; Prosser, Torts (4th ed), § 122, p 859 ff.

Conceding, *arguendo,* that there is a higher risk of collusion in guest passenger cases, it is disproportionate, and therefore unreasonable, to bar recovery in the large generality of cases (where collusion is not present or will not succeed) to forestall a few successful frauds.

Another evil perceived by this Court in *Naudzius* was that "some passengers who solicit rides may manufacture claims for liability".[50]

A commentator states that "[a]pparently, the series of guest statutes passed in the late 1920's and 1930's were a legislative response to the public's outcry over a series of widely publicized cases in which hitchhikers sought exorbitant damages from their unsuspecting host".[51]

Prosser, unable to find any evidence of these widely publicized cases, rejects the hitchhiker thesis.[52]

Whatever the viability in 1931 of the asserted purpose to protect generous motorists from the false claims of hitchhikers, there is no evidence of this danger today.

"Although by straining our imagination we could possibly derive a theoretically 'conceivable,' but totally unrealistic, state purpose that might support this classification scheme, we do not believe our constitutional adjudicatory function should be governed by such a highly fictional approach to statutory purpose."[53]

This Court in *Naudzius* stated that "[i]t is well known that drivers hesitate to take neighbors for

---

[50] *Naudzius v Lahr,* fn 40 *supra,* 224.

[51] Note, *Torts—California Guest Statute Unconstitutional Denial of Equal Protection,* 23 Drake L Rev 216, 217 (1973).

[52] Prosser, Torts (4th ed), § 34, p 187, n 8.

[53] *Brown v Merlo,* fn 5 *supra,* 865, fn 7.

a ride or to assist on his way a weary traveler because of potential liability for injuries".[54]

It has been suggested that because under guest passenger statutes drivers are not exposed to liability for ordinary negligence, they are more willing to offer rides to guests, thus reducing fuel consumption and the number of automobiles on the road.

In response, it might be argued that because drivers are insulated from liability for their negligence, each person drives his own car rather than be a "guest", and fuel consumption remains high.

In point of fact, the presence or absence of a guest statute does not affect the decision of friends and relatives to ride together in an automobile. Drivers may hesitate to pick up hitchhikers, but not because of potential liability for negligence, ordinary or gross. Friends and relatives offer, seek, accept, or decline rides with each other for reasons quite apart from the ability to recover for negligently inflicted injury, death or loss. It is only after the fortuitous event of an accident that the existence of the statute becomes known to most people. The absence of a guest passenger statute would not chill hospitality or group transportation any more or less than its existence promotes such activity.

Even if the state did have an interest in protecting drivers from the "ingratitude" of friends, relatives or weary travelers, most automobiles today are insured.[55] In several states, like Michigan,

---

[54] *Naudzius v Lahr,* fn 40 *supra,* 224.

[55] It has been estimated that in the late 1920's, when most guest statutes were enacted, about 20% of automobile drivers carried insurance. In 1973, it was estimated that nearly 85% were insured. 23 Drake L Rev, fn 9 *supra,* 222, fn 59. *Brown v Merlo,* fn 5 *supra,* 868, fn 10.

In Michigan, under no-fault, all automobiles must be insured.

automobile insurance is mandatory. The analogy to the proverbial ingratitude of the dog that bites the hand that feeds him is inapposite. An injured guest does not evidence "ingratitude" by suing the driver's insurance company.[56]

Another "possible reason" for the guest statute has been suggested "in the purse of the motor owning public".[57] The argument is that guest passenger statutes limit liability and reduce litigation, thereby allowing insurance companies to offer coverage at lower rates.

The guest passenger statute may have reduced the number of recoveries, but whether it has reduced litigation is not clear.

The statute provides that guests transported in a motor vehicle cannot recover against the owner or operator absent a showing of gross negligence or wilful and wanton misconduct.[58]

Plaintiffs, defendants, and their insurers expend considerable time and money litigating whether plaintiff was a "guest" being "transported" in a motor vehicle and if so, whether his injuries were caused by "gross negligence or wilful and wanton misconduct".

Conceding, *arguendo,* that insurance rates are lower because there is a guest statute,[59] lower insurance premiums do not, without more, justify an essentially arbitrary classification.

If persons injured on Thursdays or men between

---

[56] *Brown v Merlo,* fn 5 *supra,* 867.

[57] *Naudzius v Lahr,* fn 40 *supra,* 224.

[58] See fn 1.

[59] In Comment, *The Ohio Guest Statute,* 22 Ohio St L J 629 (1961), a study is noted which concludes there is no direct relationship between insurance rates and the presence or absence of a guest statute.

It is questionable whether different rates can be attributed to any one factor.

50 and 60 years of age were denied recovery for ordinary negligence, there would be assurance of less litigation, fewer recoveries, and the possibility of lower insurance rates. Nevertheless, all would agree that such classifications would be struck down as "arbitrary" despite the relief afforded "the purse of the motor owning public".

It may be legitimate for the Legislature to intervene in the increasing costs of automobile insurance. But the means selected by the Legislature to do so must be reasonably related to the object sought to be attained. Denying guest passengers recovery for ordinary negligence is no more[60] reasonably related to the objective of lower insurance rates than would be denying recovery to persons injured on Thursdays or men between 50 and 60 years of age.

Guest passengers as a class are not better able to bear the cost of lower premiums for the motor owning public. As a class, they are not necessarily all wealthy nor do they necessarily all have especial sources of recovery. Those who do not have other sources of recovery are forced to exhaust their own resources and may become public charges.

The purpose asserted here—lower rates from private insurance companies—is to be distinguished from efforts to control the cost of governmental benefit programs.

Because there are innumerable interests competing for a share of the public purse which is chroni-

---

[60] It is arguable that denying guests recovery for ordinary negligence is *less* related to the objective of lower insurance rates.

Assuming that some drivers are willing falsely to admit negligence to enable some of their guests to recover against their insurance companies, there is no reason to believe they would have the same incentive falsely to admit liability merely because the person, including the driver of the other car, his guests and pedestrians, is injured on a Thursday or is a man between 50 and 60 years of age.

cally depleted, courts are prone to defer to governmental decisions reflected in experimental legislation regarding disbursement of public entitlements. But it is not settled that even the effort of government to reduce costs and protect the public fisc is a sufficient justification for selecting a discrete class for disparate treatment. That question is a subject of heated debate in welfare litigation. It would appear that many United States District Courts do not accept cost as a sufficient justification.[61] And the United States Supreme Court in *Dandridge v Williams,* 397 US 471; 90 S Ct 1153; 25 L Ed 2d 491 (1970), while adverting to the state's fiscal problems in its opinion, rested its decision to uphold Maryland's maximum grant system on other grounds.[62]

What then is left to justify the classification (1) between nonpaying passengers and paying passengers in the same automobile and (2) between nonpaying passengers and pedestrians, drivers of and passengers in other cars, and owners of property?

This Court, in an opinion written by Justice TALBOT SMITH, previously recognized the "irreconcilable conflict between the provisions of the [guest

[61] The Court in *Green v Department of Public Welfare,* 270 F Supp 173, 177 (D Del, 1967), stated that the economic interest of the state, "no matter how worthy in the abstract, is not a permissible basis for differentiating between persons who otherwise possess the same status in their relationship to the State * * * ".

Similarly *see Dews v Henry,* 297 F Supp 587, 592 (D Ariz, 1969); *Westberry v Fisher,* 297 F Supp 1109, 1114–1115 (D Me, 1969); *Williams v Dandridge,* 297 F Supp 450, 458 (D Md, 1968), *rev'd* 397 US 471; 90 S Ct 1153; 25 L Ed 2d 491 (1970); *Harrell v Tobriner,* 279 F Supp 22 (D DC, 1967); *Thompson v Shapiro,* 270 F Supp 331 (D Conn, 1967), *aff'd* 394 US 618; 89 S Ct 1322; 22 L Ed 2d 600 (1969). Dienes, *To Feed the Hungry: Judicial Retrenchment in Welfare Adjudication,* 58 Cal L Rev 555, 605–606 (1970).

[62] "It is enough that a solid foundation for the regulation can be found in the State's legitimate interest in encouraging employment and in avoiding discrimination between welfare families and the families of the working poor." *Dandridge v Williams,* fn 24 *supra,* 486.

statute] and the principles and traditions of the common law, the customs and convictions of our people".[63] Justice Smith described the operative effect of the guest statute:

"The friends of the driver, his family * * * must suffer injury at his hands without recompense, solaced only by the thought that, after all, the skull was cracked by a friendly hand. * * * Why? Because the relationship between them was one of trust and friendship. No money had changed hands. If, however, not the neighbor himself is carried to town, but rather his livestock to the slaughterhouse, many modern courts will permit full recovery for injury to the unfortunate animal through failure to use reasonable care for its safety. Is this one answer of an enlightened people to the hallowed question: *How much then is a man better than a sheep?*"[64] (Emphasis supplied.)

Justice Smith posed the question of the reasonableness of the guest passenger exception, but in sustaining plaintiff's verdict was not called upon to decide this question.

Courts should proceed cautiously and should defer to legislative judgments which are reasonable. The Legislature must be free to experiment without being required to attain "mathematical nicety" in its formulation of remedies to social and economic problems.

In declaring the guest passenger statute unconstitutional, however, none can say that this Court has not paid due deference to the legislative judgment. Michigan's 45-year-old guest statute is no longer an experiment. It is now our responsibility to examine carefully the proffered purposes and determine whether they are reasonable and, if so,

[63] *Stevens v Stevens,* 355 Mich 363, 369; 94 NW2d 858 (1959).

[64] *Stevens v Stevens,* fn 63 *supra,* 370–371, quoting from *Matt* 12:11 and 12, Authorized Version.

whether the guest classification bears a substantial relation to them. After the experience of 45 years, we are no longer content to require guests to bear the entire cost of their negligently inflicted injuries because "[p]erhaps the legislature also had other reasons for the law".

To deny guests recompense for negligently inflicted injury, death or loss cannot be justified as a reasonable means to promote hospitality, foster gratitude, prevent collusion, perjury or fraud, reduce insurance premiums, or protect generous drivers from "vexatious litigation"[65] by ungrateful guests or conniving hitchhikers.

We hold the guest passenger exception unconstitutional and remand for trial on the question of damages.

T. G. KAVANAGH, C. J., and WILLIAMS, J., concurred with LEVIN, J.

M. S. COLEMAN, J. *(dissent).* We find the majority's judicial net of constitutional review to be constructed of too small a mesh.

We are confronted with a challenge to the constitutionality of the guest passenger act. The writers on both sides of this specific equal protection question are blessed with decisions of sister states and discussions by commentators and academia in support of either conclusion.

Candor leads us to admit no personal compulsion to keep alive the guest passenger act. However, there is a soaring issue which transcends the fate of this act.

We speak of that balance wheel built into our United States Constitution at its 1789 beginning and since preserved and known generally as the

---

[65] *Silver v Silver,* fn 5 *supra,* 123.

Separation of Powers doctrine. It has been a specific provision of all of Michigan's Constitutions commencing in 1835. In today's flood tide of challenges to legislation on the basis of denial of equal protection, we are compelled to look past the immediate case to its impact on future constitutional tests of legislation (such as statutes of limitation, notice provisions, a multitude of school, business and labor provisions, etc.).

We see the plurality opinion as placing too much power in the judiciary.

Therefore, we would adopt a more modest stance and join the majority of the relatively few states which have reviewed the question. The abrogation of this statute should be one for legislative determination.

We would affirm the circuit court because plaintiff has failed to demonstrate that the Legislature acted arbitrarily or that the guest passenger act bears no rational relationship to permissible statutory objectives. Neither does the act come within the purview of the "strict scrutiny" requirements. In other words, plaintiff fails to show that the Legislature has not met the tests developed over the years of precedent in Michigan or the United States Supreme Court.

Plaintiff is the administrator of the estate of Mardelle Williams, who died in an accident while a guest passenger in an automobile owned by defendant Pamame and driven by defendant McGowan. Prior to trial, plaintiff challenged the constitutionality of MCLA 257.401; MSA 9.2101 insofar as it requires a guest passenger to demonstrate that any injury, death or loss was "caused by the gross negligence or wilful and wanton misconduct of the owner or operator" of the involved motor vehicle. It was argued that this statute violates the

provision for equal protection of the laws as guaranteed by Const 1963, art 1, § 2 and the US Const, Am XIV.

The trial court rejected the constitutional challenge and a verdict of no cause of action was returned against plaintiff. Leave to appeal prior to decision of the Court of Appeals was granted.

## I. STATUTE

1929 PA 19 added the following provision to that section of the Motor Vehicle Code found at MCLA 257.401; MSA 9.2101. It is this language which plaintiff challenges:

"Provided, however, That no person, transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

## II. CONSTITUTION

Because our colleagues do not explain how the act might violate the due process clause,[1] we will

---

[1] It has been noted that plaintiff argues violation of the due process and equal protection clauses and footnote 2 refers to both.

(Amendments to US Const, art XIV, § 1: " * * * nor shall any state deprive any person of life, liberty, or property, without due process of law * * * ."

Const 1963, art 1, § 17: "No person shall * * * be deprived of life, liberty or property, without due process of law.")

confine this analysis to the equal protection clauses of state and Federal Constitutions:

Amendments to US Const, art XIV, § 1:

" * * * nor shall any State * * * deny to any person within its jurisdiction the equal protection of the laws."

Const 1963, art 1, § 2:

"No person shall be denied the equal protection of the laws."

### III. Common Law

Because the Legislature does not usually proffer reasons for its enactments other than in general terms,[2] the Court frequently is obliged to imagine what the purposes of a statute might be.[3] The Court is forced to suppose and surmise. As a discipline emphasizing logic and rationality, the law does not comfortably perform these tasks.

Therefore, we long have held that a statute comes "clothed in a presumption of constitutionality".[4] We commence here, as always, with the belief that the Legislature did not intentionally pass an unconstitutional act—that it had its reasons.

Although there could be many reasons for the guest passenger act, both parties and the plurality

[2] Title to Michigan Vehicle Code: (MCLA 257.1 *et seq.;* MSA 9.1801 *et seq.)*
"AN ACT * * * to provide for civil liability of owners and operators of vehicles * * * ."

[3] Also, *see Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441; 208 NW2d 469 (1973), and *W A Foote Memorial Hospital, Inc v City of Jackson Hospital Authority,* 390 Mich 193; 211 NW2d 649 (1973).

[4] For a recent discussion, *see People v Bricker,* 389 Mich 524; 208 NW2d 172 (1973).

speak largely to the possible reasons (among others) specifically noted in *Naudzius v Lahr,* 253 Mich 216; 234 NW2d 581; 74 ALR 1189 (1931).

There, the Court was asked to decide whether the classification in the guest passenger act was unreasonable, arbitrary or unlawful so as to render the statute a violation of the equal protection provisions.

That Court held that the standards to be applied were listed in *Lindsley v Natural Carbonic Gas Co,* 220 US 61; 31 S Ct 337; 55 L Ed 369 (1911):

"1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and *avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety* or because in practice it results in some inequality. 3. When the classification in such a law is called in question, *if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.* 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." (Emphasis added.)[5]

The *Naudzius* Court set forth and discussed a number of reasons which (among others) it found adequate to support the classification. The Court said:

"It would be threshing old straw to discuss the accepted

_____

[5] The majority concedes agreement that

"[t]he Legislature must be free to experiment without being required to attain mathematical nicety in its formulation of remedies to social and economic problems."    .

fact that the motor car has presented social, financial, and governmental problems which justify the legislature in reasonably classifying it apart from other vehicles in the enactment of laws."

After a careful analysis the Court found:

"As evil may be conceived which the act tends to remedy, the classification cannot be said to be arbitrary but must be held to have a basis for legislative action."

This Court has consistently espoused similar reasoning. As recently as in *Alexander v Detroit,* 392 Mich 30; 219 NW2d 41 (1974), we examined the record and found a classification to be purely arbitrary.

Although our colleagues cite *Alexander*[6] as supporting the standard espoused as the *"means scrutiny"* (emphasis added), we believe the connective thread too gossamer to have substance.[7]

Regardless, we agree that the words employed are not in themselves hallowed. The acts and decisions which flow from the words give them life and meaning.

Towards this end, additional judicial precedent must be examined.

Two recent United States Supreme Court cases parallel the language of *Lindsley* in decisions which maintain respect for legislative action.

In *San Antonio School Independent Dist v Rodriguez,* 411 US 1; 93 S Ct 1278; 36 L Ed 2d 16 (1973),

[6] When this writer concurred in the result of *Alexander,* employing the words "rational relationship" instead of "reasonable relationship", she was chided by her colleagues as being too technical, there being no difference of substance. (If the classification was unreasonable, it had no rational basis and so was arbitrary.)

[7] The same argument applies to the two other Michigan cases cited, *Fox v Employment Security Commission,* 379 Mich 579; 153 NW2d 644 (1967) ("a relation"); *Reich v State Highway Department,* 386 Mich 617; 194 NW2d 700 (1972) ("a reasonable relationship").

the Court said that, if a suspect classification or fundamental right were not involved,[8] the classification "must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute invidious discrimination". In declining to find an equal protection violation, the Court noted the following:

"In sum, to the extent that the Texas system of school financing results in unequal expenditures between children who happen to reside in different districts, we cannot say that such disparities are the product of a system that is so *irrational* as to be invidiously discriminatory. * * * It certainly is not the product of purposeful discrimination against any group or class. On the contrary, it is rooted in decades of experience in Texas and elsewhere, and in major part is the product of responsible studies by qualified people. In giving substance to the *presumption of validity* to which the Texas system is entitled, *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78 (1911), it is important to remember that at every stage of its development it has constituted a 'rough accommodation' of interests in an effort to arrive at practical and workable solutions. *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70 [33 S Ct 441; 57 L Ed 30] (1913). One also must remember that the system here challenged is not peculiar to Texas or to any other State. * * * *The constitutional standard under the Equal Protection Clause is whether the challenged state action rationally furthers a legitimate state purpose or interest. McGinnis v. Royster,* 410 U.S. 263, 270 [93 S Ct 1055; 35 L Ed 2d 282] (1973). We hold that the Texas plan abundantly satisfies this standard." (Emphasis added.)

---

[8] The Court has adopted alternative standards for certain areas of analysis. When classifications concern a fundamental interest or are based on certain criteria *(e.g.,* race), the Court will strictly scrutinize legislation. For an example, see *Memorial Hospital v Maricopa County,* 415 US 250; 94 S Ct 1076; 39 L Ed 2d 306 (1974). The parties do not claim that the classification established by the guest passenger proviso necessitates a "strict scrutiny".

The Court also said:

"We need not rest our decision, however, solely on the inappropriateness of the strict-scrutiny test. A century of Supreme Court adjudication under the Equal Protection Clause affirmatively supports the *application of the traditional standard of review, which requires only that the State's system be shown to bear some rational relationship to legitimate state purposes.*" (Emphasis added.)

More recently this deferential posture was also evident in *Village of Belle Terre v Boraas,* 416 US 1; 94 S Ct 1536; 39 L Ed 2d 797 (1974).[9] In rebuffing an equal protection challenge to a zoning ordinance, the Court noted a fundamental right. The Court said of the legislation:

"It involves no procedural disparity inflicted on some but not on others such as was presented by *Griffin v. Illinois,* 351 U.S. 12; 76 S. Ct. 585; 100 L. Ed. 891 (1956). It involves no 'fundamental' right guaranteed by the Constitution, such as voting, *Harper v. Virginia Board,* 383 U.S. 663; 86 S. Ct. 1079; 16 L. Ed. 2d 169 (1966); the right of association, *NAACP v. Alabama* 357 U.S. 449; 78 S.Ct. 1163; 2 L.Ed. 2d 1488 (1958); the right of access to the courts, *NAACP v. Button,* 371 U.S. 415; 83 S.Ct. 328; 9 L.Ed.2d 405 (1963); or any rights of privacy, *cf. Griswold v. Connecticut,* 381 U.S. 479; 85 S.Ct. 1678; 14 L.Ed. 2d 510 (1965); *Eisenstadt v. Baird,* 405 U.S. 438, 453–454; 92 S.Ct. 1029; 31 L.Ed.2d 349 (1972). *We deal with economic and social legislation where legislatures have historically drawn lines which we respect against the charge of violation of the Equal Protection Clause if the law be ' "reasonable, not arbitrary" '* (quoting *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415; 40 S.Ct. 560; 64 L.Ed. 989 [1920]) and bears '*a rational*

---

[9] *See* Note: *Boraas v Village of Belle Terre: The New, New Equal Protection,* 72 Mich L Rev 508 (1974). *Compare* Gunther, *In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv L Rev 1 (1972).

*relationship to a [permissible] state objective.' Reed v.
Reed,* 404 U.S. 71, 76; 92 S.Ct. 251; 30 L.Ed.2d 225
(1971)." (Emphasis added.)

In both decisions, the Court was loath to invalidate a legislative judgment. In *Rodriguez,* the state permitted each locality to finance schools as it saw fit. In *Boraas,* the state permitted each locality to zone its land as it saw fit and the Court declined to intercede in the legislative or local decisions.

The plaintiff in *Kahn v Shevin,* 416 US 351; 94 S Ct 1734; 40 L Ed 2d 189 (1974), challenged a Florida statute granting widows (but not widowers) an annual $500 property tax exemption. The Court applied this standard:

"We have long held that '[w]here taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.' *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359 [93 S Ct 1001; 35 L Ed 2d 351 (1973)]. A state tax law is not arbitrary although it 'discriminate[s] in favor of a certain class * * * if the discrimination is founded upon a reasonable distinction, or difference in state policy,' not in conflict with the Federal Constitution. *Allied Stores v. Bowers,* 358 U.S. 522, 528 [79 S Ct 437; 3 L Ed 2d 480 (1959)]."

In *Fuller v Oregon,* 417 US 40; 94 S Ct 2116; 40 L Ed 2d 642 (1974), a statute was challenged which required indigent criminal defendants to repay the costs of their defense if they later acquired adequate funds. One claim was that the statute discriminated between those convicted and those acquitted or subsequently victorious on appeal. In responding, the Court said:

"As the Court stated in *James v. Strange:* [407 US 128; 92 S Ct 2027; 32 L Ed 2d 600 (1972)] 'We do not inquire whether this statute is wise or desirable. * * * Misguided laws may nonetheless be constitutional.' 407 U.S., at 133. *Our task is merely to determine whether there is 'some rationality in the nature of the class singled out.' Rinaldi v. Yeager,* 384 U.S. 305, 308–309 [86 S Ct 1497; 16 L Ed 2d 577 (1966)]. See also *McGinnis v. Royster,* 410 U.S. 263 [93 S Ct 1055; 35 L Ed 2d 282 (1973)]; *McGowan v. Maryland,* 366 U.S. 420 [81 S Ct 1101; 6 L Ed 2d 393 (1961)]." (Emphasis added.)

Also see *Geduldig v Aiello,* 417 US 484; 94 S Ct 2485; 41 L Ed 2d 256 (1974): "Particularly with respect to social welfare programs, so long as the line drawn by the State is rationally supportable, the courts will not interpose their judgment as to the appropriate stopping point".

The cases cited above establish the generally accepted standard of review in the analysis of legislative classifications not involving fundamental interests or suspect criteria. Although not every legislative enactment is immune from judicial abrogation, the Court should proceed with restraint and deference when asked to nullify statutes. This is not the forum for debate concerning the desirability of legislation.

The leading and unanimous case in the field of guest passenger acts is *Silver v Silver,* 280 US 117; 50 S Ct 57; 74 L Ed 221; 65 ALR 939 (1929), in which the United States Supreme Court stated that it would "not assume that there are no evils to be corrected or permissible social objects to be gained by the present statute".

Texas, in upholding an act similar to ours in *Tisko v Harrison,* 500 SW2d 565 (Tex Civ App, 1973), spoke of *Silver:*

"*Silver* is in harmony with other decisions holding that the equal protection clause does not require perfection in classifying the subjects of legislation. The classic statement of this concept was made by Mr. Justice Holmes * * * 'Great constitutional provisions must be administered with caution. Some play must be allowed for the joints of the machine, and it must be remembered *that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts.'* "

The Court went on to say:

"More recent decisions agree that an under-inclusive classification is not necessarily a fatal defect unless the legislation involves a *'suspect classification'*, such as race or poverty[10] or a *'fundamental interest'*, such as voting rights or freedom of speech. Only in these limited areas is a legislative classification subject to 'strict scrutiny' ".

A discussion followed of *Brown v Merlo,* 106 Cal Rptr 388; 506 P 2d 212; 8 Cal 3d 855 (1973).

Because California had previously abandoned the traditional tort doctrine that the status of a party determined the duty owed him, and because the statute is substantially different[11], it "lacks

---

[10] To this, we could add women and illegitimates.

[11] Cal Vehicle Code § 17158 provided:

"No person riding in or occupying a vehicle owned by him and driven by another person with his permission and no person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or the death of the owner or guest during the ride, unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the driver."

persuasive force against the backdrop"[12] of Michigan law.

However, it was the *Brown* case, however inapposite, which commenced or further encouraged some members of the judiciary to abrogate the state statutes and it is discussed pro and con in subsequent judicial reviews.

*Tisko* has this to say:

"The California court characterizes the distinction between gratuitous guests and paying passengers as irrational in the light of its earlier decision in *Rowland v Christian,* 69 Cal 2d 108; 70 Cal Rptr 97; 433 P 2d 561 (1968), which abolished the long-standing common-law distinctions between the duties owed to business invitees, licensees and social guests * * * ."

The court noted that Texas (as Michigan) has maintained the distinction between duties owed in those classifications.

### RATIONALE

On its face, MCLA 257.401 requires all guests to show gross negligence or wilful and wanton misconduct before they may recover from their host for injuries received. Any motor vehicle passenger who does not pay for the transportation and who is carried as the guest of the owner or operator falls within the statute.

Any problem of unequal treatment arises from inconsistent interpretations which courts have

---

[12] *See Primes v Tyler,* 43 Ohio St 2d 195; 331 NE2d 723 (1975). This new decision takes foothold in *Jimenez v Weinberger,* 417 US 628; 94 S Ct 2496; 41 L Ed 2d 363 (1974), having to do with the suspect subclassification of illegitimates and leaps to the conclusion of an "irrebuttable presumption" of fraud or collusion.

placed upon the words of the statute.[13] Although distinctions without substance may have been drawn in some states and individuals included whose guest status was suspect, the fault lies not with the statute. On this basis the remedy is not avoiding the statute but overruling unwise decisions.

We cannot say that this classification is irrational on its face. If the Legislature had said that all Democrats or all those injured on Thursdays had to prove the existence of gross negligence or wilful and wanton misconduct, such classification would be irrational on its face. The singling out of guest passengers does not have a similar import.

However, the classification warrants further appraisal. The most obvious reasons for a guest passenger act and those most frequently recognized in judicial opinions are (1) to minimize collusion and fraud and (2) to promote "hospitality" (including group transportation and assistance to strangers on the highway) by insulating the generous host from possible large (and discouraging) personal damages in addition to insured damages.

Out of these purposes could emerge a cause to contain insurance premiums within reasonable limits and preclude another "medical malpractice" type of fiasco which lately has invited legislative attention.

Most of those who would abrogate the legislation employ the expedient of knocking down its more apparent reasons (and in some states stated reasons) by simply saying that the reasons do not exist, or that they have no proof that they would be of great magnitude and even that they do not like the reasons.

---

[13] *See generally* Comment: *Judicial Nullification of Guest Statutes,* 41 S Cal L Rev 884 (1968).

It is easy to say that the flurry of large and suspected collusive claims which may have triggered the act would no longer occur. The truth is that we do not know. The act has been in existence for 45 years. Neither do we know how "no fault" insurance requirements will affect the class (if the insurance act itself survives the test of constitutionality). In any event, collusion is difficult to detect and establish before the court, as any judge of criminal cases can attest.

Because no method is available to identify collusive guest passenger suits and because we have no factual data to support either side of this contention, we can only guess. Because the Court has no viable means of balancing the advantages and disadvantages of the act, we can only guess and philosophize.

For this very reason, we conclude that the alleged evil is one for legislative fact-finding and policy consideration.

The same rationale is applicable to the hospitable driver. It is easy to say that the host would or would not welcome just as many car pool members, hitchhikers and others regardless of the number of suits and size of awards, whether within or in excess of insured liability. We could say that the numbers of suits—vexatious, fraudulent or otherwise—would soar. But the truth is that we do not know. We can only guess.

We are told that money is no object in such deliberations as this. The fact that the Legislature may have considered the impact upon the "average citizen" payer of insurance premiums is not considered a valid state interest. However, we direct attention to the medical malpractice insurance problem which is at this very moment a matter of legislative concern.

The thrust of these inquiries is that we do not know the answers—and neither do our colleagues.

Because we say that something is a fact, it is not necessarily so. The Legislature, however, has the means for gathering the data and background material upon which to base public policy and subsequent modification, repeal or ratification of the act. We would defer to that branch of government.

## CONCLUSION

Our colleagues concede that the Legislature may have had reasons for the statute at the time of its passage and we concede that a broad view of statutory constitutionality is appropriate in the "experimental stage".

Where we part, however, is in the contention that the life of a legislative enactment (even in such a litigious field!) somehow makes it suspect and that it therefore is incumbent upon the judiciary to impose its own stamp of approval or, as here, disapproval.

We are offered no standards excepting our own value judgments, our own data guessing games and the application of our own seven personal convictions or philosophies.

The constitutional validity or invalidity of this particular act is of great concern to us because it sets the pattern for future scrutiny of legislative enactments. With no substitution of standards for those abolished, it will be too easy to override the Legislature.

We find the prevailing opinion to do violence to the Separation of Powers doctrine and to place too much power in the judiciary.

J. W. FITZGERALD, J., concurred with M. S. COLEMAN, J.

SWAINSON and LINDEMER, JJ., took no part in the decision of this case.